[Cite as *In re K.R.H.*, 2026-Ohio-583.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| IN RE: K.R.H. AND C.H. | : | |
| | : | C.A. No. 30587 |
| | : | |
| | : | Trial Court Case Nos. G-2018-001688-1J,10; G-2018-001689-1G,1L |
| | : | |
| | : | (Appeal from Common Pleas Court-Juvenile Division) |
| | : | |
| | : | **FINAL JUDGMENT ENTRY & OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on February 20, 2026, the judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with the opinion.

Costs to be paid as follows: 50% by appellant and 50% by appellee.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.


For the court,


_____
CHRISTOPHER B. EPLEY, JUDGE

TUCKER, J., and HANSEMAN, J., concur.

OPINION

NATHAN D. BOONE, Attorney for Appellant
E.T., Appellee, Pro Se

EPLEY, J.

**{¶ 1}** Father appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, modifying his parenting time with his son, C.H., to the Standard Order of Parenting Time and with his daughter, K.R.H., to therapy sessions only, with future modifications at the therapist's discretion. For the following reasons, the trial court's judgment as to C.H. is affirmed, the judgment as to K.R.H. is reversed, and the matter is remanded for further proceedings.

## I. Facts and Procedural History

**{¶ 2}** The parties are the unmarried parents of two minor children, C.H. (born August 14, 2015) and K.R.H. (born June 6, 2008). The parenting time schedule for C.H. alternated every other week. For example, one week C.H. would be with Mother from Monday to Tuesday, with Father from Tuesday to Friday, with Mother until the following Thursday, and with Father from Thursday until Sunday, and this schedule would rotate the following week. K.R.H.'s parenting time with Father took place during biweekly counseling sessions. On November 21, 2023, Father filed a motion for change of custody. On December 27, 2023, Mother filed a motion for change of parenting time. The trial court appointed a guardian ad litem ("GAL"), and a trial was held on April 12, 2024.

**{¶ 3}** Prior to the trial, on April 9, 2024, the GAL, Michael Porter, filed his report and recommendations. The GAL explained that in preparation for issuing his recommendations, he reviewed the relevant case history, including the prior GAL report, school records for both

children, text messages between Father and Mother, and a letter from Carrie A. Phillips, LISW (the therapist treating Father and K.R.H.). In the letter, Phillips wrote that she had been ill for an extended period, which interfered with her ability to conduct regular therapy sessions with Father and K.R.H. The GAL also interviewed Father, Mother, C.H., K.R.H., and C.H.'s teacher. He stated that he attempted to contact Phillips to discuss this matter but was unsuccessful.

{¶ 4} During his interview, Father informed the GAL that he and K.R.H. had previously gotten into an argument, which resulted in K.R.H. not wanting to spend time with Father outside of their therapy sessions with Phillips. Although Father and K.R.H. had been attending therapy together, Father stated that Phillips's health issues significantly limited her availability, which in turn limited Father's time with K.R.H. With respect to C.H., Father stated that they have a positive relationship and he participates in as many of C.H.'s activities as possible.

{¶ 5} During Mother's interview with the GAL, she expressed that K.R.H. is old enough to decide whether she wants to visit Father. Mother also stated that she wished to modify Father's parenting time with C.H. to the Standard Order of Parenting Time ("SOPT"). She emphasized the need for more consistency, and stated that the current schedule was confusing and stressful for C.H. C.H.'s teacher reported that both parents were involved in C.H.'s schooling and corresponded with her regularly regarding C.H. She further stated to the GAL that she believed that both parents were looking out for C.H.'s best interests.

{¶ 6} As to the children, the GAL reported that C.H. was friendly, happy, and enjoyed spending time in both Father and Mother's homes. C.H. also informed the GAL that he would like to spend equal amounts of time with each parent. The GAL met with K.R.H. on two occasions – once at Mother's home and once at Centerville High School where K.R.H. was

3

enrolled. K.R.H. described prior arguments between her and Father and told the GAL that she does not mind when Father texts her, as long as he does not do it excessively. She expressed that counseling with Father and Phillips was "ok," but seemed more open to the idea of spending time with Father at dinner or another activity.

{¶ 7} Based upon his review of the case history and the interviews he conducted, the GAL opined that it would be in C.H.'s best interest to remain in Mother's custody where he is established in the school district, has friends, and participates in activities. However, the GAL also acknowledged that the current schedule bred inconsistency and recommended a schedule where the same two weekdays are allocated to each parent, with alternating weekends. He reasoned that this would allow C.H. to adjust to the schedule without constantly wondering which house he is going to after school each day. With respect to K.R.H., the GAL expressed concern regarding the lack of consistent therapy and how that impacted parenting time between Father and K.R.H. Accordingly, the GAL recommended that, on weeks when there is not a therapy session, Father and K.R.H. should spend time together at dinner or another activity to help them build a better relationship.

{¶ 8} Both parties appeared for the trial on April 12, 2024. On April 16, 2024, the magistrate issued an order that Father's parenting time with C.H. be subject to the SOPT. The magistrate further ordered that Father's parenting time with K.R.H. continue to be limited to therapy sessions with Phillips and that any modification of that time would be at Phillips's direction. Father filed objections to the magistrate's decision, and on July 18, 2025, the trial court issued an order overruling Father's objections as to parenting time with C.H. and K.R.H.

{¶ 9} Father appeals from the trial court's judgment, raising two assignments of error. Mother did not file a responsive brief.

## II. Appellate Review

{¶ 10} In matters of parenting time, we accord a trial court broad discretion, and its decision will not be reversed absent an abuse of discretion. *Shoenfelt v. Shoenfelt*, 2009-Ohio-6594, ¶ 7 (2d Dist.). The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "It is to be expected, however, that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *State v. Malloy*, 2012-Ohio-2664, ¶ 24 (2d Dist.).

{¶ 11} When modifying parenting time, a trial court considers the factors set forth in R.C. 3109.051(D) and then determines, using its sound discretion, the parenting schedule in the best interest of the children. *In re E.R.*, 2022-Ohio-3658, ¶ 9 (2d Dist.), citing *Braatz v. Braatz*, 85 Ohio St.3d 40, 45 (1999). These factors include the prior interaction and interrelationships of the child and parents; the location of each parent's residence; the child and parents' available time; the age of the child; the child's adjustment to home, school, and community; the child's wishes; the health and safety of the child; the amount of time that will be available for the child to spend with siblings; the mental and physical health of all parties; each parent's willingness to reschedule missed time; the criminal history of the parents involving acts that resulted in a child being abused or neglected; whether either parent has continuously and willfully denied the other parent's right to parenting time; whether either parent has established or plans to establish an out-of-state residence; and any other factor in the best interest of the child. *Braatz* at 45; R.C. 3109.051(D).

{¶ 12} When evaluating whether a modification is in a child's best interest, R.C. 3109.04 identifies various factors for a trial court to "consider" when exercising its discretion and making this determination. *Palichat v. Palichat*, 2019-Ohio-1379, ¶ 28

(2d Dist.); *see*, *e.g.*, *Hutchinson v. Hutchinson*, 2014-Ohio-4604, ¶ 32 (2d Dist.). The trial court, however, is not obligated to recite or discuss any factors individually. *Id.* The critical issue is whether the record supports the trial court's conclusions and whether it explained its best-interest determination sufficiently. *Palichat* at ¶ 33-36 (finding that the record supported the trial court's explanation for its best-interest determination despite its failure to discuss each best-interest factor by name); *Doane v. Doane*, 2001 WL 474267, *6 (5th Dist. May 2, 2001) (noting that R.C. 3109.04(F)(2) "does not require the court to make independent findings on each of the . . . factors" and that "a silent record raises the presumption that a trial court considered the factors").

{¶ 13} Further, "[a] trial court is not bound to follow the recommendations of a guardian ad litem." *In re E.M.W.*, 2009-Ohio-3016, ¶ 18 (2d Dist.). "The trial court should review the report of a guardian ad litem 'in connection with all other evidence presented to it.' The trial court, as the trier of fact, determines the credibility of, and weight to be given to, the report." *Id.*, quoting *Smith v. Quigg*, 2006-Ohio-1495, ¶ 66 (5th Dist.).

**A. Father's Parenting Time with C.H.**

{¶ 14} In his first assignment of error, Father claims that the trial court abused its discretion in modifying Father's parenting time with C.H. to the SOPT, rejecting the GAL's recommendation, and reducing Father's time without proper findings under R.C. 3109.051(D).

{¶ 15} The evidence establishes that the most significant concerns for both parties and the GAL regarding Father's parenting time with C.H. were consistency and predictability for C.H. Mother testified that she wanted fewer transitions throughout the week for C.H. and expressed that the SOPT would provide a more consistent schedule. Although Mother acknowledged that the SOPT would slightly reduce Father's overall parenting time with C.H.,

6

she testified that this was not her objective. Rather, she stated that her motivation for requesting implementation of the SOPT was increased stability for C.H. Similarly, the GAL testified that the schedule he proposed in his report and recommendation would allow more consistency for C.H. The GAL stated, "So I think if we can identify standard days per parent, I think that would solidify – or simplify that for [C.H.]. Plus [C.H.] has expressed a desire to want to spend equal time with both parents." Father also testified that he was aware of the GAL's recommendation as to C.H. and agreed with it.

{¶ 16} Upon review, this Court cannot find that the trial court abused its discretion when it modified Father's parenting time with C.H. to the SOPT. Mother, Father, and the GAL testified as to C.H.'s need for a more predictable and reliable schedule. Under the SOPT, the parties will alternate every weekend, and Father will have parenting time with C.H. on Wednesday evenings. Although the GAL recommended designating two specific weekdays for each parent, the SOPT varies only slightly from that recommendation and still remedies the parties' concerns regarding consistency. Additionally, the trial court adequately considered the factors set forth in R.C. 3109.051(D). In its ruling, the trial court listed the factors and identified the relevant evidence or testimony presented with respect to each one. The trial court concluded its analysis of these factors finding that it is in the best interest of C.H. for the SOPT to be implemented. It reasoned, "The testimony provided indicates the current Parenting Time schedule causes confusion and difficulty for the child and that the Standard Order would provide more consistency."

{¶ 17} Accordingly, we find that the record supports the trial court's modification of Father's parenting time with C.H. to the SOPT. Father's first assignment of error is overruled.

**B. Father's Parenting Time with K.R.H.**

{¶ 18} In his second assignment of error, Father asserts that the trial court abused its

7

discretion in limiting Father's parenting time with K.R.H. to therapy sessions only with modifications at the therapist's discretion, rejecting the GAL's recommendation for additional parenting time, and improperly delegating judicial authority to a third party.

{¶ 19} Father testified that going to counseling together seemed to be helping his relationship with K.R.H. Although they were supposed to attend counseling together every other Friday, they had not been able to attend regular counseling sessions for several months due to the counselor's health issues. When the counseling sessions did not take place, Father did not see K.R.H. When asked about the GAL's recommendation that he and K.R.H. go to dinner or another activity on weeks when Phillips is unavailable for counseling, Father testified that he liked that recommendation. Father acknowledged that under the trial court's previous order, he was allowed to take K.R.H. alone after two therapy sessions. He testified, though, that he had not done so because Phillips expressed concern that K.R.H. might make accusations against Father if they were alone. Father also stated that he would like to communicate with K.R.H. more often, but she has expressed that she does not want that right now and he wants to respect her wishes.

{¶ 20} In addition, Father testified that K.R.H. had been texting his mother (K.R.H.'s paternal grandmother) more frequently, wanting to see her. He believed that including K.R.H.'s paternal grandmother in their dinner or activity plans would help improve his relationship with K.R.H. and keep the situation peaceful. Notably, both Mother and Father acknowledged that K.R.H.'s paternal grandmother attends sporting events for both children; Mother regularly sends the paternal grandmother pictures and updates about the children; and Mother never discourages the children from interacting and spending time with their paternal grandmother or Father's other family members. Mother also testified that if the trial

8

court were to order K.R.H. to attend dinner with Father on weeks when they do not have therapy, she would "absolutely" make sure that K.R.H. attends.

{¶ 21} On the record before us, we cannot ascertain the basis of the trial court's decision regarding Father's parenting time with K.R.H. Rather, the record reflects that although counseling has been helpful, Phillips's health issues and other personal matters have made regular sessions difficult to schedule. In fact, Phillips herself acknowledged in her letter to the GAL that her health issues interfered with her ability to schedule regular therapy sessions. Further, Father, Mother, K.R.H., and K.R.H.'s paternal grandmother have agreed that when therapy sessions are not possible, it would be beneficial for Father, K.R.H., and K.R.H.'s paternal grandmother to have dinner together or spend time together doing another activity. Mother, Father, and K.R.H.'s paternal grandmother have all agreed to help facilitate that plan, as well. Therefore, we find that the record does not support the trial court's finding that Father's parenting time with K.R.H. should be limited to therapy sessions with Phillips. This arrangement has resulted in Father having no contact with K.R.H. for months at a time, and there is nothing in the record to indicate that this serves K.R.H.'s best interest.

{¶ 22} The record is also devoid of sufficient analysis in support of the trial court's order that any modification to Father's parenting time with K.R.H. must be solely within Phillips's discretion. Phillips has been unable to conduct regular therapy sessions with Father and K.R.H., resulting in Father having no time with his daughter. Without therapy sessions, it would be difficult for Phillips to make additional recommendations. There is no alternative plan in place when therapy is missed. Mother and Father both testified that K.R.H. and her paternal grandmother have a positive relationship, and Father stated that she would be willing to join him and K.R.H. during dinner or another activity when therapy is not possible. Accordingly, it appears that this arrangement would address Phillips's concern that

9

Father and K.R.H. not spend time together alone. We find nothing in the record to support the trial court's conclusion that it is in K.R.H.'s best interest for Father's parenting time to be determined by Phillips. Because the record in this matter does not support the trial court's judgment regarding Father's parenting time with K.R.H., we find that the trial court abused its discretion with respect to this issue. Therefore, Father's second assignment of error is sustained.

### III.    Conclusion

{¶ 23} The trial court's judgment as to C.H. is affirmed. The trial court's judgment as to K.R.H. is reversed and the matter is remanded for further proceedings.

. . . . . . . . . . . . .

TUCKER, J., and HANSEMAN, J., concur.